**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

S.A.M., B.A.S., M.N.N., S.D., A.A.S., and INTERNATIONAL
REFUGEE ASSISTANCE PROJECT, INC.,

                    Plaintiffs,

       v.

UNITED STATES DEPARTMENT OF STATE, MARCO
RUBIO, in his official capacity as Secretary of State, and DON
BROWN, in his official capacity as Afghan Special Immigrant
Visa Coordinator,

                  Defendants.

No. 24 Civ. 7656 (NRB)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
PARTIALLY DISMISS PLAINTIFFS' AMENDED COMPLAINT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2699
Email: rachael.doud@usdoj.gov

RACHAEL DOUD
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ......................................................................................................................3

    I.     Overview of the Afghan SIV ...................................................................................3

    II.    Plaintiffs' Allegations ............................................................................................4

STANDARD OF REVIEW .......................................................................................................6

    I.     Rule 12(b)(1)..........................................................................................................6

    II.    Rule 12(b)(6)..........................................................................................................6

ARGUMENT ...........................................................................................................................7

    I.     PLAINTIFFS FAIL TO ASSERT A VIABLE CAUSE OF ACTION .................7

        A.    The AAPA Does Not Provide a Private Right of Action............................7

        B.    Plaintiffs Cannot Assert a Claim Under the APA.....................................11

        C.    Plaintiffs Cannot Bring a Claim Under *Accardi* ........................................14

    II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ...........................................................................................................17

    III.   IRAP LACKS STANDING AS TO ITS NON-FOIA CLAIMS ..........................19

        A.    Legal Requirements for Standing ..............................................................19

        B.    IRAP Cannot Establish Organizational Standing ......................................20

    IV.   CERTAIN PLAINTIFFS' CLAIMS ARE UNRIPE ............................................22

CONCLUSION ......................................................................................................................23

i

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(s)**

*Abdo v. Tillerson*, No. 17-CV-7,
    519 (PGG), 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019) ............................................ 10, 14

*Al Naham v. U.S. Dep't of State*,
    No. 14-cv-9974 (JPO), 2015 WL 3457448 (S.D.N.Y. June 1, 2015)............................... 10

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)............................................................................................................ 8

*Arizona Hudson Valley LLC v. Allen*,
    22-CV-1306, 2023 WL 3936640 (N.D.N.Y. June 9, 2023)............................................. 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................................ 6

*Bark v. U.S. Forest Serv.*,
    37 F. Supp. 3d 41 (D.D.C. 2014) .................................................................................... 19

*Bhd. of Ry. Carmen Div., Transp. Commc'ns Int'l Union v. Pena*,
    64 F.3d 702 (D.C. Cir. 1995)........................................................................................... 23

*Chen v. Garland*,
    43 F.4th 244 (2d Cir. 2022) ............................................................................................. 13

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971).......................................................................................................... 11

*De Dandrade v. U.S. Dep't of Homeland Sec.*,
    367 F. Supp. 3d 174 (S.D.N.Y. 2019).............................................................................. 9

*Dep't of State v. Munoz*,
    602 U.S. 899 (2024).......................................................................................................... 10

*Diaz v. Rosen*,
    986 F.3d 687 (7th Cir. 2021) ....................................................................................... 2, 15

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*,
    954 F.3d 118 (2d Cir. 2020).................................................................................. 15, 20, 21

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994)................................................................................................ 6

*Heckler v. Chaney*,
    470 U.S. 821 (1985)................................................................................................*passim*

*Hettiarachchige v. Bitter*,
    22cv3622 (DLC), 2022 WL 17738771 (S.D.N.Y. Dec. 16, 2022)............................ 10, 14

*Hunt v. Wash. State Apple Adver. Comm'n*,
    432 U.S. 333 (1977)............................................................................................................ 20

*INS v. Aguirre-Aguirre*,
    526 U.S. 415 (1999)..................................................................................................... 12, 13

*Jama v. Immigration and Customs Enforcement*,
    543 U.S. 335 (2005).............................................................................................................. 9

*Keiler v. Harlequin Enters. Ltd.*,
    751 F.3d 64 (2d Cir. 2014)................................................................................................... 6

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008) ......................................................................................... 17

*Lehman v. Nakshian*,
    453 U.S. 156 (1981).............................................................................................................. 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)............................................................................................................ 20

*Li v. Chertoff*,
    No. 06-cv-13679 (LAP), 2007 WL 541974 (S.D.N.Y. Feb. 16, 2007) ........................... 11

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)............................................................................................................ 11

*Lipkin v. S.E.C.*,
    468 F. Supp. 2d 614 (S.D.N.Y. 2006)................................................................................. 7

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)................................................................................................. 6

*Mississippi Valley Gas Co. v. F.E.R.C.*,
    68 F.3d 503 (D.C. Cir. 1995)............................................................................................. 22

*Morton v. Ruiz*,
    415 U.S. 199 (1974)............................................................................................................ 16

*Moya v. U.S. Dep't of Homeland Sec.*,
    975 F.3d 120 (2d Cir. 2020)..................................................................21-22

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*,
    684 F.3d 286 (2d Cir. 2012)....................................................................20

*Nat'l Park Hosp. Ass'n v. DOI*,
    538 U.S. 803 (2003)...............................................................................22

*Padula v. Webster*,
    822 F.2d 97 (D.C. Cir. 1987)..................................................................16

*Phifer v. City of New York*,
    289 F.3d 49 (2d Cir. 2002)........................................................................6

*Physicians for Social Responsibility v. Wheeler*,
    956 F.3d 634 (D.C. Cir. 2020).................................................................11

*S.E.C. v. Rorech*,
    673 F. Supp. 2d 217 (S.D.N.Y. 2009).......................................................6

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016)......................................................................20

*Sing v. United States*,
    158 U.S. 538 (1895)...............................................................................12

*Small Business in Telecommc'ns v. FCC*,
    251 F.3d 1015 (D.C. Cir. 2011)...............................................................22

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)........................................................................19-20

*Still v. Dep't of Labor*,
    No. 17-cv-1420, 2021 WL 4502053 (D.D.C. Sept. 30, 2021).................15

*Sunny v. Biden*,
    No. 21-CV-4662 (BMC), 2023 WL 5613433 (E.D.N.Y. Aug. 30, 2023)......16

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016)......................................................................6

*Touche Ross & Co. v. Redington*,
    442 U.S. 560 (1979)..................................................................................8

iv

*Trump v. Hawaii*,
    585 U.S. 667 (2018) ................................................................................. 10

*U.S. ex rel. Vaso v. Chertoff*,
    369 F. App'x 395 (3d Cir. 2010) ............................................................ 15

*United African Org. v. Biden*,
    620 F. Supp. 3d 756 (N.D. Ill. 2022) ................................................. 16-17

*United States ex rel. Accardi v. Shaughnessy*,
    347 U.S. 260 (1954) .......................................................................... *passim*

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ................................................................................. 12

*Vela-Estrada v. Lynch*,
    817 F.3d 69 (2d Cir. 2016) ...................................................................... 14

*Velesaca v. Decker*,
    458 F. Supp. 3d 224 (S.D.N.Y. 2020) ..................................................... 15

*Wan Shih Hsieh v. Kiley*,
    569 F.2d 1179 (2d Cir. 1978) ............................................................ *passim*

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................. 19

*Webster v. Doe*,
    486 U.S. 592 (1988) ................................................................................. 13

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ................................................................................... 8

**STATUTES**

5 U.S.C. § 701(a)(2) ..................................................................................... 11

8 U.S.C. § 1101(a)(27) ................................................................................... 3

8 U.S.C. § 1201(g) .......................................................................................... 4

8 U.S.C. § 1324b(b) ........................................................................................ 9

8 U.S.C. § 1202(a) .......................................................................................... 4

*Afghan Allies Protection Act ("AAPA"), Omnibus Appropriations Act,*
 Pub. L. No. 111-8, 123 Stat. 807 (2009)..................................................................*passim*


**REGULATIONS**

22 C.F.R. § 42.81(a)............................................................................................................. 4

## PRELIMINARY STATEMENT

In this action, Plaintiffs challenge a highly discretionary step in the highly discretionary process by which the State Department awards special immigrant visas to certain Afghan nationals who have performed work for the U.S. Government.  Specifically, Plaintiffs contend that denials at an initial step in the process fail to include sufficient details concerning the reasons for the denials.  But the decision of how much detail to provide is itself a discretionary decision with national security implications.  Further, the statute that created the visa type, together with the longstanding doctrine of consular nonreviewability, makes clear that Congress did not intend courts to second guess these denials or how they are conveyed.  Aside from their claims pursuant to the Freedom of Information Act ("FOIA"),[1] Plaintiffs' Amended Complaint should be dismissed because the claims asserted are outside the Court's subject matter jurisdiction or, in the alternative, the Amended Complaint fails to state a cognizable claim upon which relief may be granted.  Additionally, Plaintiff International Refugee Assistance Project ("IRAP") lacks standing as to its non-FOIA claims, and the individual Plaintiffs' claims are unripe.

Plaintiffs' allegations in this case relate to the Afghan Special Immigrant Visa ("SIV"), pursuant to which certain Afghan nationals who were employed by or on behalf of the U.S. Government in Afghanistan are eligible to apply for an immigrant visa.  Amended Complaint, Dkt. No. 23 ("Compl.") ¶ 1; *see also* Afghan Allies Protection Act ("AAPA"), Omnibus Appropriations Act, Pub. L. No. 111-8, 123 Stat. 807 (2009) (codified in the Immigration and Nationality Act ("INA") at 8 U.S.C. § 1101 note).  Plaintiffs' claims concern the first step in the

---

[1] Defendants are not moving to dismiss Plaintiffs' FOIA claims.  *See* Amended Complaint (Dkt. No. 23) Seventh and Eighth Claims for Relief.

process of seeking an SIV, whereby prospective applicants seek "approval" from the Chief of Mission ("COM")—the lead U.S. government official in a foreign country—or their designee. AAPA § 602(b)(2)(D).

The individual Plaintiffs allege that, in denying their applications for COM approval, the COM failed to provide them with sufficient information concerning the reasons for the denials. Compl. ¶¶ 5, 48-62. IRAP is a legal aid and advocacy organization that has assisted the individual Plaintiffs in this process and alleges that the denials have interfered with its provision of those legal services. *Id.* ¶¶ 104-116. Plaintiffs allege that, by purportedly failing to provide sufficient detail in COM denial letters, Defendants have violated the AAPA and the Administrative Procedure Act ("APA"), and that the denial letters should also be held unlawful and set aside pursuant to *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), which, together with its progeny, held that federal agencies are required to follow their own regulations and certain other formally adopted procedures. *See Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021).

Plaintiffs' claims under the AAPA, APA, and *Accardi* should be dismissed. First, the AAPA does not provide a private right of action authorizing Plaintiffs to sue, and the APA does not allow for review in this instance because the COM approval process is committed to agency discretion and Congress provided no "meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Additionally, *Accardi* is inapplicable because the guidance with which Plaintiffs claim Defendants failed to comply lacks the force of law. Plaintiffs also fail to state a claim upon which relief can be granted because the level of detail provided in their denial letters is consistent with the statute and because Plaintiffs do not plausibly allege the existence of an unlawful policy. Finally, IRAP lacks standing to assert the AAPA, APA, and *Accardi* claims, and the individual Plaintiffs' claims are unripe because they

all have pending COM applications or appeals of COM actions.

## BACKGROUND

### I.    Overview of the Afghan SIV

Certain Afghan nationals who have been employed by or on behalf of the U.S. Government in their home country, and who experienced threats because of their service, are eligible to apply for an immigrant visa as a special immigrant, and, if issued the immigrant visa, to apply for admission to the United States.  *See* AAPA, § 602(a).  To demonstrate eligibility for an SIV, the individual must submit, and have approved by different government agencies, three distinct applications.

First, the individual must submit an application for COM approval to the State Department, in which they must establish "faithful and valuable service to the United States Government" in qualified employment, for a specified time period.  *See* AAPA §§ 602(b)(2)(A), (D).  Second, if the COM application is approved, the applicant must petition for classification as a special immigrant under 8 U.S.C. § 1101(a)(27).  *See id.* § 602(b)(1).  Prior to July 2022, the applicant submitted to U.S. Citizenship and Immigration Services ("USCIS") a Form I-360 Petition for Amerasian, Widow(er), or Special Immigrant.  *See, e.g.*, *Special Immigrant Visas for Afghans - Who Were Employed by/on Behalf of the U.S. Government*, U.S. DEPARTMENT OF STATE, https://travel.state.gov/content/travel/en/us-visas/immigrate/special-immg-visa-afghans-employed-us-gov/steps-of-the-afghan-siv-process.html (last visited May 2, 2025) ("COM Review – SIV Petition, Application Review, & Decision" and "Afghan Frequently Asked Questions").  Since July 2022, the COM application has also served for many applicants as the petition.  *Id.*  Third, once the applicant (outside of the United States) has COM approval and an approved petition, they may then initiate the immigrant visa process and proceed with consular processing.  *See id.* § 602(b)(1)(B).

If the applicant submits all necessary documents in preparation for making a visa application, the State Department schedules a visa interview for them once there is interview availability.  During the interview, the applicant must appear before a consular officer and make and execute a visa application and must demonstrate their eligibility for an immigrant visa.  AAPA § 602(b)(1)(B); 8 U.S.C. §§ 1202(a), (e), (h); 1361.  At the conclusion of the interview, a consular officer either issues or refuses the visa.  22 C.F.R. § 42.81(a).  If the applicant appears ineligible to receive a visa, a consular officer must refuse the visa.  *See* 8 U.S.C. § 1201(g).

With respect to COM approval, the statute requires that the COM or COM Designee "conduct a risk assessment of the [applicant] and an independent review of records maintained by the United States Government or hiring organization or entity to confirm employment and faithful and valuable service."  AAPA § 602(b)(2)(D)(i).  If an applicant is denied COM approval, they shall "receive a written decision that provides, to the maximum extent feasible, information describing the basis for the denial, including the facts and inferences underlying the individual determination."  *Id.* § 602(b)(2)(D)(ii)(I).  An applicant who is denied COM approval may submit an appeal within 120 days.  *Id.* § 602(b)(2)(D)(ii)(I)(bb).  The appeal "may request reopening of such decision and provide additional information, clarify existing information, or explain any unfavorable information."  *Id.*  In addition to taking an appeal, denied applicants often submit new COM applications.  *See generally* Declaration of Rachel Hines in Support of Motion to Dismiss ("Hines Decl.") ¶¶ 5-6, 8.

## II.    Plaintiffs' Allegations

Plaintiffs S.A.M., B.A.S., M.N.N., S.D., and A.A.S. (the "Individual Plaintiffs") allege that they are Afghan nationals who applied for COM approval and were denied such approval without sufficient explanation.  Compl. ¶¶ 2, 4.  Plaintiffs allege that, rather than explaining the reason for the denial, the denial letters they received "listed boilerplate justifications without reference to the

facts of their cases, such as a statement that the applicant did not perform 'faithful and valuable service to the U.S. Government' or that their employment did not qualify."  *Id.* ¶ 5.  Plaintiffs allege that this lack of detail forces them to "appeal or reapply based on limited information, reducing the likelihood that they will be able to overcome the denial."  *Id.* ¶ 8.

Plaintiffs allege that IRAP is a "global legal aid and advocacy organization" that "regularly assists clients who received COM denial letters with inadequate explanations."  *Id.* ¶ 6, 10.  They allege that "[t]hose deficient letters make IRAP's representation of such clients significantly more difficult and interfere with its ability to provide effective legal assistance to its client populations."  *Id.* ¶ 10.

Plaintiffs allege that "the State Department's failure to provide the required explanation for denials is a consistent agency policy or practice that deprives countless Afghan nationals of a fair opportunity to access the SIV program."  *Id.* ¶ 9.  Plaintiffs allege that this refusal violates the AAPA, the APA, and "the agency's own rules."  *Id.* ¶ 11.  Plaintiffs bring suit against the U.S. Department of State, Marco Rubio, in his official capacity as Secretary of State, and Don Brown, in his official capacity as Afghan Special Immigrant Visa Coordinator ("Defendants"),[2] seeking "an order declaring their denial letters and the agency's policy of not providing the required explanations unlawful, setting them aside, and directing Defendants to comply with the statute and agency rules."  *Id.* ¶ 11.

---

[2] Plaintiffs' original complaint, Dkt. No. 1, listed Antony Blinken, who was then Secretary of State, as a defendant.  Blinken is no longer Secretary of State, having been replaced by Marco Rubio (who is named instead in Plaintiffs' Amended Complaint), and should therefore be terminated from this action.  *See* Fed. R. of Civ. P. 25(d).

## STANDARD OF REVIEW

### I.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*  In considering a motion to dismiss pursuant to Rule 12(b)(1), the Court "generally must accept the material factual allegations in the complaint as true," but "does not . . . draw all reasonable inferences in the plaintiff's favor." *S.E.C. v. Rorech*, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009).  The Court may also consider evidence extrinsic to the pleadings.  *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002).

### II.    Rule 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 68 (2d Cir. 2014).  A claim has "facial plausibility" when the "factual content" of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted).  Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true.  *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (citation omitted).  Further, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## ARGUMENT

### I.    PLAINTIFFS FAIL TO ASSERT A VIABLE CAUSE OF ACTION

It is axiomatic that "the United States, as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (citation omitted). Consequently, suits brought against the United States must be dismissed unless a party seeking to assert a claim against the government can point to a waiver of sovereign immunity that is "unequivocally expressed." *Id.* (citation omitted). All "limitations and conditions upon which the Government consents to be sued must be strictly observed" before the waiver applies. *Id.* at 161. The APA provides a limited waiver of sovereign immunity, but only to the extent its requirements are satisfied. *See Lipkin v. S.E.C.*, 468 F. Supp. 2d 614, 621-22 (S.D.N.Y. 2006).

Here, Plaintiffs assert claims under the AAPA, the APA, and *Accardi*. However, none of these claims is viable. Plaintiffs cannot bring suit under the AAPA because it does not provide a right of action. Plaintiffs cannot bring suit under the APA because the level of detail that can feasibly be provided in COM denial letters is committed to agency discretion and there is no meaningful standard for review, particularly in light of the doctrine of consular nonreviewability, which the Second Circuit has held precludes judicial review of the "visa-issuing" process. *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978). And *Accardi* is inapplicable and therefore does not provide a cause of action because the guidance with which Plaintiffs claim Defendants failed to comply lacks the force of law.

### A.    The AAPA Does Not Provide a Private Right of Action

Plaintiffs' AAPA claim fails because the AAPA does not provide a private right of action. Section 602(b) of the AAPA created the special immigrant visa for certain Afghan nationals and governs the application process. That provision does not include a private right of action to permit

challenges to Defendants' actions thereunder.  Further, nothing in the text of the statute suggests an intent to permit such challenges.[3]  Accordingly, the Court should not find an implied private right of action.

The Supreme Court has made clear that "when deciding whether to recognize an implied cause of action, the 'determinative' question is one of statutory intent." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  "If the statute itself does not 'displa[y] an intent' to create 'a private remedy,' then 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'"  *Id.* (quoting *Sandoval*, 532 U.S. at 286-287).  Instead, the "judicial task" is "'limited solely to determining whether Congress intended to create the private right of action asserted.'"  *Id.* (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979)).  "If the statute does not itself so provide, a private cause of action will not be created through judicial mandate."  *Id.*

Here, there is nothing to suggest that the AAPA was intended to create a private cause of action.  Nothing in the text of the statute appears to envision legal challenges to enforce its provisions.  Further, the statutory text makes clear that aliens are not guaranteed visas, and that the decisions to be made in the approval process are left to the judgment and discretion of the deciding officials.  *See* AAPA § 602(b)(1) (Secretary of Homeland Security "*may* provide an alien" with special immigrant status if certain criteria are satisfied (emphasis added)); *id.* § 602(b)(2)(D)(i) (Chief of Mission tasked with "conduct[ing] a risk assessment of the alien and an independent review of records maintained by the United States Government or hiring organization or entity to

---

[3] Plaintiffs do not appear to dispute that the AAPA does not include an explicit cause of action. *See* Dkt. No. 20 at 2.

confirm employment and faithful and valuable service to the United States Government").  It is also notable that other portions of the INA do contain express private rights of action.  *See, e.g.*, 8 U.S.C. § 1324b(b) (authorizing a person alleging that they are "adversely affected directly by an unfair immigration-related employment practice" to "file a charge respecting such practice or violation"); *id.* § 1421(c) (authorizing judicial review for "[a] person whose application for naturalization under this subchapter is denied"); *id.* § 1503 (a) (providing that "[i]f any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action").  The existence of express private rights of action in certain sections of the INA is evidence that where, as here, Congress has not included one it did not intend such a cause of action to exist.  *See generally Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 341 (2005) (Court's "reluctance" to "assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply" is "even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest"); *De Dandrade v. U.S. Dep't of Homeland Sec.*, 367 F. Supp. 3d 174, 191 (S.D.N.Y. 2019) (concluding that Section 794(a) of the Rehabilitation Act does not provide plaintiffs with a private cause of action, based in part on the fact that another provision of the Rehabilitation Act provides an explicit cause of action in other circumstances).

Finding an implied right of action to challenge the Afghan SIV process would be particularly inappropriate in light of the longstanding doctrine of consular nonreviewability. Courts have long recognized the doctrine to mean that in the absence of affirmative congressional authorization for a foreign national to challenge the refusal of a visa, there is no right to judicial

review. *See Dep't of State v. Munoz*, 602 U.S. 899, 907-08 (2024). This is because the "admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (internal quotation omitted)). Accordingly, "Congress may delegate to executive officials the discretionary authority to admit noncitizens immune from judicial inquiry or interference." *Munoz*, 602 U.S. at 907-08 (internal quotation marks omitted). "When it does so, the action of an executive officer to admit or to exclude an alien is final and conclusive" and "[t]he Judicial Branch has no role to play unless expressly authorized by law." *Id.* at 908 (citations omitted).

The Second Circuit has interpreted the doctrine of consular nonreviewability broadly to preclude courts from "interfere[ing] with the visa-issuing process." *Wan Shih Hsieh*, 569 F.2d at 1181. Further, numerous judges in this district have held that the doctrine of consular nonreviewability bars even suits relating to non-merits components of the visa process, like suits challenging delays in the adjudication of a visa application. *See, e.g.*, *Hettiarachchige v. Bitter*, No. 22-cv-3622 (DLC), 2022 WL 17738771, at *2 (S.D.N.Y. Dec. 16, 2022) (granting motion to dismiss action to compel adjudication of visa application, reasoning that "[u]nder the doctrine of consular nonreviewability, the Court is without jurisdiction to do so" and the distinction plaintiffs attempted to draw between seeking to have the State Department adjudicate an application versus a challenge to a denial was "a distinction without difference in the Second Circuit"); *Abdo v. Tillerson*, No. 17-CV-7519 (PGG), 2019 WL 464819, at *3-*4 (S.D.N.Y. Feb. 5, 2019) (dismissing challenge to alleged unlawful delay in adjudicating visa application based on doctrine of consular nonreviewability and collecting cases reaching same conclusion); *Al Naham v. U.S. Dep't of State*, No. 14-cv-9974 (JPO), 2015 WL 3457448, at *3 (S.D.N.Y. June 1, 2015) (holding that doctrine of consular nonreviewability precluded jurisdiction over plaintiffs' action challenging

alleged failure to adjudicate visa applications); *Li v. Chertoff*, No. 06-cv-13679 (LAP), 2007 WL
541974, at *1 (S.D.N.Y. Feb. 16, 2007) (rejecting Plaintiff's attempt to "circumvent [the doctrine
of consular nonreviewability] by contending that the doctrine does not apply to a request that a
visa be adjudicated (as opposed to granted) within a reasonable period of time").  The reasoning
of these cases applies equally to the present case, where Plaintiffs' challenge, though in some sense
procedural in nature, by its nature seeks "interference with the visa-issuing process." *Wan Shih
Hsieh*, 569 F.2d at 1181.

### B.  Plaintiffs Cannot Assert a Claim Under the APA

Plaintiffs also cannot bring suit under the APA.  First, the APA does not authorize review
where, as here, the agency action is committed to agency discretion.  Second, even if review were
otherwise available under the APA, the doctrine of consular nonreviewability would preclude it.

Review is not available under the APA "to the extent that . . . agency action is committed
to agency discretion by law."  5 U.S.C. § 701(a)(2).  Section 701(a)(2) "imposes two related, but
distinct, barriers to judicial review." *Physicians for Social Responsibility v. Wheeler*, 956 F.3d
634, 642 (D.C. Cir. 2020).  First, the Supreme Court has "read § 701(a)(2) to preclude judicial
review of certain categories of administrative decisions that courts traditionally have regarded as
'committed to agency discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (quoting 5 U.S.C.
§ 701(a)(2)).  Certain agency decisions are thus "presumed immune from judicial review." *Heckler
v. Chaney*, 470 U.S. 821, 832 (1985).  Second, "even if agency action is presumptively reviewable,
section 701(a)(2) also applies 'in those rare instances where statutes are drawn in such broad terms
that in a given case there is no law to apply.'" *Physicians for Social Responsibility*, 956 F.3d at
642 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)).  That
is, "if the statute is drawn so that a court would have no meaningful standard against which to

judge the agency's exercise of discretion," then there can be no judicial review. *Heckler*, 470 U.S. at 830.

Visa processing is an area traditionally committed to agency discretion. Visa policy is an essential part of the "control [of] the foreign affairs of the nation," in which courts generally do not interfere. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542-43 (1950); *see also Sing v. United States*, 158 U.S. 538, 543 (1895) ("[A]ccording to the accepted maxims of international law, every sovereign nation has the power, inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe."); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("[W]e have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations." (citation omitted)).

The SIV process at issue in this case is no exception. Congress granted broad, discretionary authority to the Secretaries of Homeland Security and State, in conjunction with other officials, to provide certain Afghan citizens or nationals with special immigrant status. *See* AAPA § 602(b)(1) (Secretary "may" provide aliens who meet requirements with "the status of a special immigrant"). As a part of this multistep discretionary process, the COM is tasked with "conduct[ing] a risk assessment of the alien and an independent review of records maintained by the United States Government or hiring organization or entity to confirm employment and faithful and valuable service to the United States Government." *Id.* § 602(b)(2)(D)(ii). Not only is the standard, "faithful and valuable service," highly discretionary, but the determination is reliant on the COM's exercise of judgment and evaluation of potentially sensitive materials concerning the applicant's service to the United States and any risks granting special immigrant status might cause. In the

framework of that discretionary decision, the COM must also decide how much information to disclose to the applicant, disclosing such information only "to the maximum extent feasible." *Id.* § 602(b)(2)(D)(ii). That determination is itself sensitive and reliant on the COM's exercise of judgment, as disclosing sensitive information concerning the applicant's service or security risks could raise national security concerns.

There is no meaningful judicial standard available for this Court to assess whether, in a particular instance, the COM provided as much information concerning a denial as was "feasible" given the national security concerns at issue. *Heckler*, 470 U.S. at 830 (finding judicial review unavailable where the court "would have no meaningful standard against which to judge the agency's exercise of discretion"). To make such a determination, the Court would have to review the information provided to the COM and conduct its own risk assessment as to each particular application—something Congress has given no indication it intends the courts to do. *See generally Aguirre-Aguirre*, 526 U.S. at 425 (in the absence of such congressional direction, the executive branch retains extensive authority and "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations" (internal quotation marks omitted)); *Webster v. Doe*, 486 U.S. 592, 600 (1988) (a standard deferring to an official's judgment as to what is "necessary or advisable in the interests of the United States . . . fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review"). Accordingly, the Court should dismiss Plaintiffs' APA claims for lack of jurisdiction. *See generally Chen v. Garland*, 43 F.4th 244, 252-53 (2d Cir. 2022) (holding that court lacked jurisdiction to consider plaintiff's challenge to Immigration Judge's refusal to reopen plaintiff's case *sua sponte*, because the decision was committed to agency discretion and there was "no

meaningful standard against which to judge the agency's exercise of discretion" (citation omitted)); *Vela-Estrada v. Lynch*, 817 F.3d 69, 71 (2d Cir. 2016) (holding that Board of Immigration Appeals' decision not to certify untimely appeal was committed to agency discretion by regulation, precluding judicial review).

Even if the APA might otherwise authorize review, moreover, the doctrine of consular nonreviewability would preclude it.  As discussed above, the Second Circuit interprets the doctrine broadly as precluding judicial "interference with the visa-issuing process."  *Wan Shih Hsieh*, 569 F.2d at 1181.  The APA cannot supply jurisdiction to review components of the visa-issuing process where such review is barred.  *See, e.g.*, *Abdo*, 2019 WL 464819, at *4 (holding that claim of unlawful failure to adjudicate visa application in violation of APA was precluded by doctrine of consular nonreviewability); *Saleh v. Holder*, 84 Supp. 3d 135, 139-140 (E.D.N.Y. 2014) (holding that doctrine of consular nonreviewability barred suit to compel adjudication of visa applications and that plaintiff's invocation of the APA "change[d] nothing" because "the embassy's decision to deny two of the visas, which is shielded from the Court's review by the doctrine of consular nonreviewability, is exempt from review under the APA because it is discretionary" (internal quotation marks omitted)).[4]

### C.  Plaintiffs Cannot Bring a Claim Under *Accardi*

Plaintiffs likewise fail to assert a valid claim under *Accardi*.

As an initial matter, *Accardi* does not provide an independent basis for jurisdiction in this case.  "*Accardi* and its progeny teach generally that federal agencies are required to follow their

---

[4] As the court observed in *Hettiarachchige v. Bitter*, "[t]he Second Circuit has not been clear as to whether consular nonreviewability is a jurisdictional question or a prudential consideration." 2022 WL 17738771, at *2.  "Nevertheless, [i]t is settled that the judiciary will not interfere with the visa-issuing process."  *Id.* (quoting *Wan Shih Hsieh*, 569 F.2d at 1181)).

own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion." *Diaz*, 986 F.3d at 690.   However, the *Accardi* doctrine is a principle governing review of agency action, and not an independent cause of action.   In *Accardi*, for example, the Court considered a habeas petition claiming that the BIA had failed to exercise discretion, as required by its regulations, in making a determination.   *Accardi*, 347 U.S. at 261.   Thus, the habeas statute provided the basis for jurisdiction.   *See U.S. ex rel. Vaso v. Chertoff*, 369 F. App'x 395, 400 (3d Cir. 2010) (rejecting claim that *Accardi* provided federal court jurisdiction to review discretionary determinations, reasoning that plaintiff's "argument misconstrues *Accardi*," in which "[t]here was no discussion . . . of the district court's jurisdiction over the habeas petition," and "[i]nstead, *Accardi* addressed the limited question of whether the BIA had exercised its discretion appropriately").   In other cases, courts have described an *Accardi* claim as a type of claim under the APA.   *See, e.g.*, *Velesaca v. Decker*, 458 F. Supp. 3d 224, 236 (S.D.N.Y. 2020) (noting that, "[w]hen agencies fail to [follow their own regulations], the APA (as developed by case law) gives aggrieved parties a cause of action to enforce compliance" (citing *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020))).   Construed as additional APA claims, Plaintiffs' *Accardi* claims fail for the same reasons discussed above—that the visa-related decisions at issue are committed to agency discretion and review is precluded by the doctrine of consular nonreviewability.

In any event, the *Accardi* doctrine does not apply to an agency's rules unless they have the force of law.   *See, e.g.*, *Diaz*, 986 F.3d at 690 ("The *Accardi* doctrine generally does not apply to an agency's internal memoranda, at least those that are neither designed to protect individual rights nor intended to have the force of law."); *Still v. Dep't of Labor*, No. 17-cv-1420, 2021 WL 4502053, at *4 (D.D.C. Sept. 30, 2021) (agency's policy is generally "subject to *Accardi* if it limits

the agency's discretion and imposes 'rights or obligations on the respective parties'" (quoting *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987))).  Here, Plaintiffs base their *Accardi* claims on Defendants' alleged failure to comply with a January 28, 2014, cable from the Secretary of State to the Consular Section Chiefs at posts and COM Committees at the U.S. embassies in Baghdad and Kabul.  *See* Compl. Ex. A.  This cable lacks the force of law and thus cannot form the basis for valid claims under *Accardi*.

The cable is an internal document that is directed to government personnel and provides guidance on the application of the FY 2014 extension of the Afghan SIV.  The majority of the cable simply describes the provisions of the relevant statute, the National Defense Authorization Act for FY2014 ("NDAA 2014").  Plaintiffs focus on a specific section of the cable concerning COM denials.  In addition to parroting the statute's language concerning the provision of a written decision to applicants denied COM approval, this section states that "[t]he COM may not include in the denial notice any classified information or direct reporting that led to the denial," and "[a]pplicants denied based on classified information should be informed that the information leading to the denial may not be shared with the applicant due to its sensitivity."  Dkt. No. 23-1 at 4.  Nothing in the cable suggests that it was intended to create rights on behalf of applicants denied approval, as opposed to simply providing guidance to relevant personnel.  Courts have held that comparable internal documents do not give rise to claims under *Accardi*.  *See, e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (declining to give legal effect to agency's internal manual that had not been promulgated under the APA); *Sunny v. Biden*, No. 21-CV-4662 (BMC), 2023 WL 5613433, at *3-4 (E.D.N.Y. Aug. 30, 2023) (holding that State Department cable concerning consular services did not create binding obligations); *United African Org. v. Biden*, 620 F. Supp. 3d 756,

774 (N.D. Ill. 2022) (holding that neither Foreign Affairs Manual's internal operational directives nor cable to chiefs of mission had the force of law necessary to support an *Accardi* claim).

Further, the specific provision Plaintiffs claim Defendants violated by failing to inform applicants of the reasons for denial merely parrots the language of the statute and then provides that "[a]pplicants denied based on classified information *should* be informed that the information leading to the denial may not be shared with the applicant due to its sensitivity." Dkt. No. 23-1 at 4 (emphasis added). This statement that such information should be included in a denial letter does not even purport to provide a rigid requirement, much less create a right on behalf of applicants. *See generally Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008) (use of the word "should" makes a Congressional statement "permissive, and not mandatory").[5]

## II.    PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

As discussed above, Plaintiffs do not assert any viable cause of action (aside from FOIA, which claims Defendants do not move to dismiss). Accordingly, Plaintiffs' non-FOIA claims should be dismissed for lack of jurisdiction, and the Court need not consider their merits. But if the Court were inclined to examine the merits, Plaintiffs' non-FOIA claims also fail to state a claim upon which relief can be granted and should be dismissed for that reason as well.

Plaintiffs' First, Third, and Fifth Claims for Relief assert that the Individual Plaintiffs' denial letters fail to contain sufficient details concerning the reasons for the denials, while

---

[5] It is also unclear whether Plaintiffs were denied COM approval based on classified information, such that this statement would even be applicable. Instead, the Amended Complaint alleges that "the denial letters provided to the Individual Plaintiffs did not contain SBU or lower information describing the basis for the denial . . . or alternatively a statement that classified information leading to the denial may not be shared due to its sensitivity," Compl. ¶ 172; *see also id.* ¶ 177— even though the denials did indisputably contain some information concerning the bases for the denials.

Plaintiffs' Second, Fourth, and Sixth Claims allege that this lack of detail was part of an unlawful policy. *See* Compl., Claims for Relief. Plaintiffs fail to plausibly allege that the specific letters they received are deficient, or that there was any unlawful policy.

First, each of the denial letters Plaintiffs received includes information concerning the reason for the denial. *See* Compl. ¶¶ 69, 75, 83, 90, 97. For example, the denial letter received by M.N.N. in 2023 informed him: "Given that your employment was terminated for cause, you have not established that you meet the requirement of faithful and valuable service to the U.S. government or the International Security Assistance Force (ISAF)/Resolute Support (RS)." Compl. ¶ 83. While Plaintiffs complain that the letter did not include additional information, such as "why the COM designee believed M.N.N. had been terminated from his employment for cause," *id.* ¶ 84, the explanation that was provided is consistent with the statute's direction to provide "information describing the basis for the denial, including the facts and inferences underlying the individual determination." AAPA § 602(b)(2)(D)(ii)(I). And while other denial letters—most notably those reporting that approval was denied because derogatory information was associated with the case—contain fewer details, such information might reasonably be viewed by the COM as sensitive information that should not be disclosed.

Plaintiffs also fail to plausibly allege the existence of an unlawful policy of failing to provide the requisite level of detail. While Plaintiffs allege that the denial letters they received do not contain sufficient detail concerning the reasons for denial, these letters represent individual, fact-specific determinations—not a generally-applicable policy. Indeed, Plaintiffs' denial letters, which contain a variety of bases and explanations for denial, make this clear. And while Plaintiffs allege that COM staff are required to "copy and paste directly from a list of pre-written denial reasons" and "[t]his boilerplate language does not allow COM staff to input case-specific

information into the denial letters, with limited exceptions," Compl. ¶ 59, letters Plaintiffs received do contain case-specific details.  *See id.* ¶ 75 (letter to B.A.S. informing him that "[t]he letter of employment from [a particular employer that Plaintiffs redacted] submitted with your application for Chief of Mission approval does not establish qualifying employment"); *id.* ¶ 83 (letter to M.N.N. identifying issue as the fact that he was terminated for cause); *id.* ¶ 97 (informing A.A.S. that "[t]he documents [he] submitted with [his] previous application for Chief of Mission approval were confirmed as fraudulent").  These letters make clear that the determination of how much detail it is "feasible" to provide, AAPA § 602(b)(2)(D)(ii)(I), is case-specific, and not the result of a blanket policy of refusing to provide any details.  Plaintiffs cannot plausibly allege that a "policy" that does not exist is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and should therefore be set aside.  Compl. ¶ 167; *see generally Bark v. U.S. Forest Serv.*, 37 F. Supp. 3d 41, 50 (D.D.C. 2014) ("Plaintiffs appear to have attached a 'policy' label to their own amorphous description of the [defendant government agency's] practices.  But a final action requires more.").

## III.  IRAP LACKS STANDING AS TO ITS NON-FOIA CLAIMS

IRAP asserts standing as an organization.  Compl. ¶¶ 104-116.  However, IRAP fails to plausibly allege that it falls within the zone of interests to be protected by the statutes at issue, and its non-FOIA claims should therefore be dismissed.

### A.    Legal Requirements for Standing

Standing requires that a plaintiff have "a personal stake in the outcome of the controversy [so] as to warrant his invocation of federal-court jurisdiction."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  At its "irreducible constitutional minimum," this requires a plaintiff to demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 338 (2016).  In addition, a plaintiff must "assert interests that are arguably within the zone of interests to be protected or regulated by the statute she claims was violated." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016).  The "zone of interests" test "requires [a court] to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).  "The relevant zone of interests for an APA claim is defined by the statute that the plaintiff says was violated, rather than by the APA itself."  *Fed. Defs. of N.Y., Inc.*, 954 F.3d at 127 (citation omitted).

An organizational plaintiff can establish standing on behalf of itself or its members.  First, an organizational plaintiff may establish "associational standing" based on injury to its members by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Alternatively, to show standing on its own behalf, "the organization itself must meet the same standing test that applies to individuals."  *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (alterations and internal quotation marks omitted).  Here, IRAP asserts standing on its own behalf.  Compl. ¶¶ 104-116.

### B.    IRAP Cannot Establish Organizational Standing

"The relevant zone of interests for an APA claim is defined by the statute that the plaintiff says was violated, rather than by the APA itself."  *Fed. Defs. of N.Y., Inc.*, 954 F.3d at 127 (citation omitted).  Accordingly, the Court should look to the relevant provisions of the AAPA to determine whether IRAP is within the zone of interests intended to be protected.  As discussed in Section

I.A, *supra*, the AAPA does not provide a private cause of action.  Further, nothing in the AAPA suggests an intent to protect the rights of legal services organizations.

This case is not like *Federal Defenders of New York*, in which the Second Circuit held that legal service providers fell within the zone of interests of the statute at issue.  In that case, the Federal Defenders sued under the APA, alleging that the Bureau of Prisons failed to comply with its own regulations on inmate-attorney visits.  Specifically, they pointed to regulatory provisions that direct the Warden to provide the opportunity for pretrial inmate-attorney visits every day of the week and set forth various parameters for scheduling the visits.  954 F.3d at 128-29.  The court held that the Federal Defenders were in the zone of interest meant to be protected by these regulations because the Federal Defenders sought "to protect their interests in having adequate access to their clients"—interests that "mirror the interests that these BOP regulations seek to protect, namely: the strong interests of MDC inmates, especially pretrial detainees whose cases have not been adjudicated, in having adequate access to legal counsel."  *Id.* at 131.  Here, by contrast, the AAPA does not focus on access to legal services.

This case is more like *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 132 (2d Cir. 2020), in which the court held that a non-profit organization that assisted applicants for naturalization was outside the zone of interest and lacked standing to sue under the Immigration and Nationality Act or APA to challenge that process.  In *Moya*, the organizational plaintiff alleged that "Defendants' unlawful policies and practices . . . frustrate[d] [its] mission of helping eligible constituents become United States Citizens."  *Id.* at 131.  The court held that this did not suffice, because the plaintiff "must have more than a derivative interest in someone else's rights to satisfy the zone-of-interests test," noting that the INA provision at issue "would not even affect [the organization] but for its 'mission of helping [ ] eligible constituents' comply

with the statute and the resources it expends in pursuit of that mission." *Id.* at 131-32. Here, similarly, IRAP's asserted interest is that Defendants' failure to provide more details in COM denials makes it harder for IRAP to advocate on behalf of its clients. Compl. ¶¶ 104-116. This is precisely the sort of alleged injury *Moya* found insufficient in a similar context.

## IV.    PLAINTIFFS' CLAIMS ARE UNRIPE

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 807-08 (2003) (citation omitted).

All of the Individual Plaintiffs have COM appeals or new COM applications pending. Specifically, Plaintiffs S.A.M., B.A.S., S.D., and A.A.S. have pending appeals, and Plaintiffs M.N.N. and A.A.S. have pending COM applications. *See* Hines Decl. ¶¶ 4-8. Because determination of these pending appeals and applications may dispose of plaintiffs' claims—either because they receive COM approval, or because they receive what they deem to be a more satisfactory explanation—the Court could also dismiss their claims on ripeness grounds. *See, e.g.*, *Mississippi Valley Gas Co. v. F.E.R.C.*, 68 F.3d 503, 506 (D.C. Cir. 1995) (dismissing petition as unripe because petitioner "may eventually obtain the relief it seeks in the course of the hearings still pending before FERC"); *Arizona Hudson Valley LLC v. Allen*, 1:22-CV-1306, 2023 WL 3936640, at *3 (N.D.N.Y. June 9, 2023) (noting that "because plaintiffs' appeal of the permit revocation [they challenged] remains pending before the Zoning Board of Appeals, this § 1983 action is probably unripe"); *see also Small Business in Telecommc'ns v. FCC*, 251 F.3d 1015, 1023 (D.C. Cir. 2001) ("[A] party that stays before an agency to seek reconsideration of an order cannot at the same time before a court to seek review of that same order" (internal quotation marks

omitted)); *Bhd. of Ry. Carmen Div., Transp. Commc'ns Int'l Union v. Pena*, 64 F.3d 702, 703 (D.C. Cir. 1995) ("As we have repeatedly held, a petition for review filed while a request for agency reconsideration is pending is incurably premature." (internal quotation marks omitted)).

## CONCLUSION

For the reasons set forth herein, the Government respectfully asks that the Court dismiss Claims One through Six of Plaintiffs' Amended Complaint.

Dated:  May 2, 2025
        New York, New York

                          Respectfully Submitted,

                          JAY CLAYTON
                          United States Attorney of the
                          Southern District of New York

                  By:   /s/ *Rachael Doud*
                          RACHAEL DOUD
                          Assistant United States Attorney
                          86 Chambers Street, Third Floor
                          New York, New York 10007
                          Tel.: (212) 637-2699
                          Email: rachael.doud@usdoj.go

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,190 words.